UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WHEEL SPECIALTIES, LTD., d/b/a ) | CASE NO.4:10cv2460 |
| CUSTOM WHEELS UNLIMITED,      ) | |
|                                ) | |
|         Plaintiff,            ) | JUDGE CHRISTOPHER A. BOYKO |
|                                ) | |
|   Vs.                          ) | |
|                                ) | |
| STARR WHEEL GROUP. INC., ET AL ) | OPINION AND ORDER |
|                                ) | |
|         Defendant.             ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF # 62) and Plaintiff's Motion for Partial Summary Judgment (ECF # 65).  For the following reasons, the Court denies Defendant's Motion and grants, in part, Plaintiff's Motion.

According to Plaintiff's Verified Complaint, Plaintiff Wheel Specialties, Ltd. ("Custom Wheels") is a designer, distributor and seller of custom-tailored automobile aftermarket wheels. Custom Wheels sells its wheels under several trademarks and has spent considerable resources developing goodwill in its products and marks.  Custom Wheels has advertised and sold its wheels under several trademarks, including: MIROR ALLOYS®, ROX®, BIGG WHEELS®,

1

MEZZANO ALLOYS®, and RADD®.

Sometime in 2004, Custom Wheels entered into an agreement with Defendant Ningbo Baody Auto Parts Co., Ltd., ("Baody"), a Chinese company, to manufacture wheels for Custom Wheels. The agreement required Baody to manufacture certain unique styles and types of wheels containing Custom Wheels' trademarks exclusively for Custom Wheels. Baody agreed not to sell the wheels to any of Custom Wheels' competitors or third parties. Custom Wheels contends that in April 2008 Baody supplied Custom Wheels with defective wheels in breach of their contract. Furthermore, Custom Wheels discovered Baody was selling to Custom Wheels' competitors the styles and types of wheels that, under the agreement, were intended exclusively for Custom Wheels. Custom Wheels then filed suit in the case captioned *Wheels Specialties, Ltd., v. Ningbo Baody Auto Parts Co., Ltd.,* Case No. 1:09CV 2669 (the first suit), alleging claims for breach of contract, breach of warranties and covenants, fraud, estoppel and for accounting. As a result of the suit, the parties signed a Settlement Agreement on February 22, 2010, which contained mutual releases and a covenant not to sue.

In March of 2010, Starr Wheel Group, Inc. ("Starr") emailed prospective customers that it had acquired eighty-five hundred wheels for sale at a discounted price. The acquired wheels included wheels bearing the trademarks of Custom Wheels. The email represented that the newly acquired wheels were liquidated stock shipped from China. The packing list for a shipment of wheels shows they shipped from Baody to Starr on April 4, 2010. Both Starr and Warrior Imports, Inc. ("Warrior") sold Custom Wheels' trademarked wheels.

On June 28, 2010, Custom Wheels filed suit against Baody. On October 28, 2010, the Court dismissed the suit without prejudice for procedural reasons. That same day, Plaintiff filed

this suit asserting claims against Baody, Starr and Warrior for trademark infringement, trademark counterfeiting, violation of the Lanham Act, violation of Ohio Deceptive Trade Practices Act and a claim for defamation against Baody alone. On January 19, 2012, the Court granted Baody's Motion for Judgment on the Pleadings, dismissing all Plaintiff's claims against it and denied Starr and Warrior's Motion for Judgment on the Pleadings. Custom Wheels has now moved for Partial Summary Judgment on its trademark infringement and trademark counterfeiting claims against Starr and Warrior. Starr moves for Summary Judgment on all Custom Wheels' claims. Warrior does not move and has not opposed Custom Wheels' Motion.

**Defendant Starr's Motion**

Starr contends Plaintiff cannot maintain a cause of action for trademark infringement and unfair competition because none of the wheels sold by Starr Wheels were counterfeits, reproductions, copies or imitations of Custom Wheels' wheels. Instead, they were the actual wheels produced by Baody for Custom Wheels. Nor has Custom Wheels suffered any damage as a result of Starr's sales of Custom Wheels' wheels. Custom Wheels' 30(b) witness was unable to identify any damages as a result of Starr's purchase of Custom Wheels' trademarked goods.

Starr also contends Plaintiff cannot maintain a claim for trademark counterfeiting because Starr never knowingly used Plaintiff's trademarked wheels. Once Starr learned that the wheels it purchased from Baody were trademarked, Starr took steps to ensure it did not sell any trademarked wheels. Because Starr relied on representations by Baody that Custom Wheels was no longer in business, Starr argues it cannot be liable for knowingly using counterfeit trademarked goods since Custom Wheels cannot prove intent.

Starr further contends Plaintiff can produce no evidence to support its claim of a

deceptive act by Starr that supports Plaintiff's Ohio Deceptive Trade Practices claim. Starr argues there is no evidence of customer confusion or misunderstanding. Nor is there any evidence that Plaintiff lost sales or market share as a result of Starr's purchase from Baody. Furthermore, Plaintiff cannot show Starr even knew it was selling Plaintiff's goods.

Custom Wheels opposes Starr's Motion for Summary Judgment, contending that Starr sold wheels bearing marks identical to Custom Wheels' trademarks. Starr never inquired further into Baody's representation that Custom Wheels was out of business but remained willfully blind to the status of Custom Wheels. Starr admittedly sold wheels bearing Custom Wheels' marks to customers at a lower rate than authentic Custom Wheels' wheels. Custom Wheels has lost sales and image and goodwill because Custom Wheels did not have the opportunity to approve the quality of the wheels bearing its marks.

Custom Wheels contends that it never authorized Starr to sell Custom Wheels' trademarked wheels. Furthermore, Custom Wheels rejected the wheels Starr purchased from Baody and never authorized Baody to continue producing nonconforming wheels bearing Custom's trademarks. On this basis, the wheels sold by Starr and bearing Plaintiff's trademarks are not "authentic" and are, therefore, counterfeit goods.

**Plaintiff's Motion for Partial Summary Judgment**

Plaintiff moves for Partial Summary Judgment on its federal claims for trademark infringement and trademark counterfeiting. According to Custom Wheels, Starr sold wheels bearing Custom Wheels trademarks, marketed the Wheels as authentic Custom Wheels' wheels and sold them at a lower price than authentic Custom Wheels. Custom Wheels contends Starr never inquired whether the wheels were authentic and Custom Wheels never authorized Starr to

sell the wheels.

## LAW AND ANALYSIS

### Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *accord Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006); *Turner v. City of Taylor*, 412 F.3d 629, 637 (6th Cir. 2005). The initial burden to demonstrate the absence of a genuine issue of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir.1995). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v. Gilley*, 385 F.3d 683, 689-90 (6th Cir. 2004); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). A fact is material only if its resolution "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

When deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th

Cir. 2006); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317). Furthermore, the Court is not required "to search the entire record to establish that it is bereft of a genuine issue of material fact." *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996). Rather, the burden falls on the non-moving party to designate specific facts or evidence in dispute. *Anderson*, 477 U.S. at 249-250.

**Trademark Infringement and Counterfeiting 15 U.S.C. 1114 and Lanham Act**

"A trademark is a designation used 'to identify and distinguish' the goods of a person." *J. Thomas McCarthy, McCarthy on Trademarks,* § 3.1 (4th ed.2004) (quoting 15 U.S.C. §1127). 15 U.S.C. §1114 of the Lanham Act states in pertinent part:

> [a]ny person who shall, without the consent of the registrant-
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[,]....
> shall be liable in a civil action by the registrant[.]
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

15 U.S.C. § 1114(1).

"Under the Lanham Act, 15 U.S.C. §1051 *et seq.*, we use the same test to decide

whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks." *Audi AG and Volkswagon of America, Inc. v. D'Amato,* 469 F.3d 534, 542 (6th Cir. 2006) citing *Two Pesos v. Taco Cabana,* 505 U.S. 763, 780 (1992).

"To establish liability for trademark infringement under section 1114, the trademark registrant must show: (1) that it owns a valid, protectable trademark; (2) that the defendant used the mark in commerce and without the registrant's consent; and (3) there was a likelihood of consumer confusion." *Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.* 363 F.Supp.2d 952, 957 -958 (S.D.Ohio, 2005). " The registrant does not need to prove intent under this section." *Id.*

The Sixth Circuit has held when determining whether there is a likelihood of confusion, courts should consider the following eight factors: (1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing of channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Wynn Oil Co., & Classic Car Wash, Inc. v. Thomas*, 839 F.2d 1183, 1186-90 (6th Cir. 1988) citing *Frisch's Restaurants v. Elby's Big Boy, Inc.,* 670 F.2d 642 (6th Cir.1982).

It is important to establish as an initial matter what is not in dispute. The parties agree that the wheels sold by Starr bearing Custom Wheels' marks were purchased by Starr from Baody who was, at one time, the authorized manufacturer of Custom Wheels' trademarked wheels. It is also not in dispute Custom Wheels ended its relationship with Baody prior to Baody's offering the wheels in question to Starr. Further, it is undisputed that the wheels in

7

question were rejected by Custom Wheels for failing to meet Custom's quality standards.  Thus, there is no dispute that the wheels sold by Starr, bearing Plaintiff's marks, were wheels rejected by Custom Wheels.

This is not the classic case of counterfeiting a mark wherein an alleged counterfeiter places on goods it sells an unauthorized copy of a mark registered to a competitor.  Instead, the facts herein describe Starr selling products with Plaintiff's marks that were provided to Starr by the onetime authorized manufacturer of Plaintiff's products.  In fact, Starr admits it sold Plaintiff's trademarked wheels.  (ECF # 66 pg. 6).

**Custom Wheels wheels sold by Starr are not Genuine**

The central issue in this case is whether the wheels sold by Starr bearing Custom Wheels marks were "genuine" Custom Wheels' wheels.  Both sides agree that in general the sale of authentic goods is not a violation of the Lanham Act. See *Monte Carlo Shirt, Inc. v. Daewoo, International (Am.) Corp.,* 707 F.2d 1054 (9th Cir. 1983).   However, in *El Greco Leather Products Co. v. Shoe World, Inc.,* 806 F.2d 392, 395 (2nd Cir. 1986), the Second Circuit held that  the Lanham Act protects a trademark holder's right to control the quality of the goods bearing its mark.  Where the trademark holder rejects the product due to quality issues, the product bearing the trademark holders marks are not genuine products.  Here, Custom Wheels rejected the wheels produced by Baody bearing Custom Wheels marks  and did not authorize Baody to manufacture or sell Custom Wheels trademarked wheels after the settlement reached by the parties.  Therefore, Baody's sale of wheels to Starr bearing Custom Wheels marks constituted a sale of non-genuine wheels, and Starr's sale of the wheels bearing Custom Wheels' marks was a sale of non-genuine wheels which deprived Custom Wheels of its right to control the quality of

the wheels. According to *El Greco*, such a sale constitutes trademark infringement. Therefore, Starr infringed Plaintiff's rights under the Lanham Act.

Defendants contend that they had no knowledge that the wheels bearing Custom Wheels' marks were not authentic goods. As both sides acknowledge, Baody sent Starr an email stating that the wheels in question were "open moulds" and Custom Wheels was out of business. ( See Ex. G to Plaintiff's Complaint). Custom Wheels counters that a simple phone call to Custom Wheels would have verified that Custom Wheels was still in business.

As the Second Circuit held in *El Greco,* lack of knowledge by Custom Wheels is no defense, especially in light of their own failure to inquire when it would have been easy to establish that Custom Wheels remained in business. Because Starr admits selling wheels bearing Custom Wheels marks, without authorization, and because the wheels were not authentic custom wheels, the Court finds Starr violated the Lanham Act and infringed on Plaintiff's marks.

The parties have not provided, and the Court is unaware, of any Sixth Circuit caselaw adopting the holding of *El Greco* in cases similar to the one at bar. However, even if the Court were to apply the eight factor test for likelihood of confusion the result would still be the same.

**Plaintiff Marks are Valid and Enforceable**

Considering the elements of an infringement claim, and the eight factor test for determining the likelihood of confusion, the Court finds Plaintiff is entitled to summary judgment on its infringement claim. Starr offers no evidence nor opposition to Plaintiff's argument that they own the marks in question nor does Starr challenge Plaintiff's assertions and supporting evidence that its marks are valid and enforceable. Therefore, Custom Wheels has established it owns the marks in question and they are valid and enforceable marks.

**Starr Used Plaintiff's Marks in Commerce**

Starr admits it used Plaintiff's marks in commerce, therefore, Plaintiff has established the second element of its infringement claim.

**Likelihood of Confusion**

In applying the eight factors to the likelihood of confusion, again Starr does not challenge Plaintiff's arguments on the strength of its marks. Custom Wheels contends its marks are the strongest marks due to their unique and intentionally misspelled names. They are arbitrary because the names MIROR and BIGG do not relate to wheels nor does MEZANNO, which is a province in Italy. Also RADD and ROX are fabricated words created by Custom Wheels. There is no dispute that Custom Wheels owns the marks in question and has used them continuously in business for the time period in question.

There is no dispute that the goods are related and the marks are similar because, in fact, the wheels in question bear Custom Wheels' actual marks, not similar marks, and were sold by Starr, which is a direct competitor of Custom Wheels.

Custom Wheels acknowledges it has no evidence at this time of actual customer confusion, however, the Sixth Circuit has held, " while such evidence [of actual confusion] is the best evidence of likelihood of confusion, the absence of actual confusion evidence is inconsequential." *PACCAR Inc. v. TeleScan Technologies, L.L.C.* 319 F.3d 243, 252 (6th Cir., 2003) overruled on other grounds in *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111 (2004) (bracket inserted for clarity).

Furthermore, Plaintiff asserts in its Verified Complaint, and Starr does not contradict, that both companies sell aftermarket wheels to customers in Ohio, throughout the United States and

10

over the internet. Therefore, Plaintiff has shown similarity in the marketing channels used by both companies.

The degree of customer care factor also supports Custom Wheels' Motion in that its Verified Complaint asserts and Starr does not dispute that wheels in general are inexpensive and readily available. The Sixth Circuit has determined that when an item is expensive or rare buyers are more likely to exercise a greater degree of care. See *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.,* 931 F.2d 1100, 1111 (6th Cir. 1997). Conversely, the less expensive and more readily available the less likely a consumer will exercise care in the purchase. Thus, Custom Wheels' evidence that the wheels in question are inexpensive and readily available supports Plaintiff's contention that there is a strong likelihood of confusion.

The Sixth Circuit has held, "[t]he lack of intent by a defendant is largely irrelevant in determining if consumers likely will be confused as to source." *PACCAR Inc.* 319 F.3d at 254, quoting *Daddy's Junky Music Stores v. Big Daddy's Family Music Center,* 109 F.3d 275, 287 (6th Cir. 1997). Starr concedes it sold Custom Wheels' trademarked wheels. "The use of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying." *Id.* While Starr contends it did not intend to deceive consumers on the source of the wheels since it believed Custom Wheels was no longer in business, Starr's intent does not diminish the fact that by selling Custom Wheels' trademarked wheels, the customers would likely be deceived into thinking they were authentic Custom Wheels' wheels.

Expansion into the relevant market is not an issue in this case since both Plaintiff and Defendants compete in the same market already.

Therefore, considering all the above factors, the Court finds the factors overwhelmingly

support a conclusion that customers were likely confused as to the source of the goods. Therefore, the Court finds Defendants infringed on Plaintiff's trademarks.[1]

**Trademark Counterfeiting**

"To establish liability for trademark counterfeiting under section 1114, a plaintiff must allege that: (1) the defendant infringed a registered trademark in violation of section 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit, as the term counterfeit is defined in 15 U.S.C. § 1116. Therefore, a claim for trademark counterfeiting involves a higher burden of proof because a plaintiff must show both trademark infringement and the intentional use of a counterfeit mark." *Abercrombie & Fitch*, 363 F.Supp.2d at 957-58.

**(B)** As used in this subsection the term "counterfeit mark" means--

> **(i)** a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or
>
> **(ii)** a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36; but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.
>
> 15 U.S.C.A. § 1116

The Court has already established that Plaintiff is entitled to summary judgment on its

---

[1] For the same reasons as applied to Starr the Court finds Plaintiff is entitled to Summary Judgment on its claim for trademark infringement against Warrior. Warrior did not oppose Plaintiff's Motion and offers no rebuttal evidence opposing Plaintiff's Verified Complaint allegations that Plaintiff owns the trademarks at issue; that the marks are valid and enforceable, Warrior has acquired wheels bearing marks identical to Plaintiffs (Verified Complaint ¶ 47-48) and Warrior has sold the wheels bearing Plaintiff's marks (Verified Complaint at 51).

claim for trademark infringement.  Therefore, Plaintiff need only establish that Starr intentionally used a counterfeit mark.

Here, the Court finds a genuine issue of fact for the jury to determine whether Defendants knew the wheels bought from Baody, bearing Plaintiff's marks, were counterfeit.  Starr cites to the email from Baody to Starr representing that Custom Wheels was out of business.  The language of the email indicates that Baody was, at least at one time, the authorized manufacturer of Custom Wheels' wheels and there is no evidence that Defendants knew Custom Wheels rejected the wheels bearing their marks.

However, Custom Wheels argues that even if Defendants didn't know the wheels at issue were not authentic wheels, they certainly knew or should have known Custom Wheels was still in business but failed to inquire further because they chose to remain "willfully blind." Therefore, the Court finds a jury must determine whether Defendants knew the wheels at issue were counterfeit, i.e., not genuine at the time they sold them.

Unlike Starr, Warrior has offered no opposition and no evidence challenging Plaintiff's Verified Complaint allegation that Warrior sold wheels bearing marks identical to Plaintiff's marks (Verified Complaint ¶ 47, 51) and has actual knowledge the wheels are counterfeit. (Verified Complaint at 49).   Therefore, the Court grants summary judgment on liability for Plaintiff and against Defendant Warrior on Plaintiff's claim for counterfeit trademark.

Starr also moves for summary judgment on Plaintiff's claim for violation of Ohio's Deceptive Trade Practices Act.  Courts have considered that trademark claims brought under the Ohio Deceptive Trade Practices Act, Ohio Rev.Code Ann. § 4165.02 , are analyzed similarly to

13

claims brought under section 43(a) of the Lanham Act.  "In fact, an analysis appropriate for a determination of liability under section 43(a) of the Lanham Act is also appropriate for determining liability under the Ohio Deceptive Trade Practices Act." *Worthington Foods, Inc. v. Kellogg Co.* 732 F.Supp. 1417, 1431 (S.D.Ohio,1990).  Therefore, the Court finds Defendants are not entitled to summary judgment on Plaintiff's Ohio Deceptive Trade Practices Act claim as they failed to prevail on Plaintiff's federal trademark claims.

Lastly, Starr alleges Custom Wheels has failed to show damages resulting from Starr's trademark infringement.  Starr relies on the deposition of Plaintiff's representative Mark Lamb who, when questioned, could not identify any lost market share, quantify lost sales, or identify lost customers.  Starr admits it sold less than 200 wheels bearing Custom Wheels' trademarks.  (Starr Wheels Motion for Summary Judgment pg. 7).  Plaintiff offers the deposition testimony of Lamb wherein Lamb states that Custom Wheels' customers purchased counterfeit wheels from Starr at a lower price than what Custom could sell the wheels.  Thus, Custom can show damages, leaving only the amount for the trier of fact to determine.

Damages for trademark infringement are governed by 15 U.S.C. § 1117, wherein it states, in pertinent part, that a Plaintiff is entitled to:

> "recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.

>Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Therefore, Plaintiff has already demonstrated an issue of fact on damages, entitling the trier of fact to determine the amount.

Therefore, for the foregoing reasons, the Court denies Starr's Motion for Summary Judgment (ECF # 62) and grants, in part, Plaintiff's Motion for Partial Summary Judgment (ECF # 65), finding for Plaintiff on its trademark infringement claim and trademark counterfeiting against Defendant Warrior, but denying, in part, Plaintiff's trademark counterfeiting claim against Starr.

      IT IS SO ORDERED.

                                          s/ Christopher A. Boyko
                                          CHRISTOPHER A. BOYKO
                                          United States District Judge

Dated: January 16, 2013